## BROWN v. STATE.

(Division B. Oct. 12, 1936. Suggestion of Error Overruled Oct. 26, 1936.)

[169 So. 837. No. 32362.]

Hearst, Pittman & Pittman, of Hattiesburg, for appellant.

Webb M. Mize, Assistant Attorney-General, for the state.

**Griffith, J.,** delivered the opinion of the court.

Appellant admitted that he shot and killed the deceased with a double-barreled shotgun, and defended on

the asserted ground that the deceased was advancing upon him with a knife, threatening at the time to kill the appellant. The eye-witnesses introduced on behalf of the state testified that, at the instant the fatal shot was fired, the deceased was approximately twenty feet away from the appellant, and it therefore became a question for the determination of the jury whether the issue of self-defense should be solved in favor of the accused. The jury was fully and correctly instructed as to the law upon that issue, and they decided against the appellant.

As stated, the question of the distance of appellant from the deceased at the moment the shot was fired was a material and perhaps a controlling issue in the case. Appellant testified that soon after the homicide he delivered the gun to his aunt, with directions to deliver it to the sheriff, and she testified that she delivered the gun to the sheriff in the same condition in which she received it—that she put no other shells in the gun, but delivered it to the sheriff exactly as she received it from appellant. The sheriff testified that the gun was loaded, both barrels, when he received it, with Peters high-velocity shells, seven and one-half shot, and that the wadding found at the scene of the homicide showed that the shot was of that size. The sheriff went to a hardware store in the nearest town and procured some additional shells of the same manufacture and of the same kind and size above mentioned; and he exhibited some of the shells to the court and jury. Having heard the testimony of the sheriff, appellant in his own testimony was interrogated about the shells, and admitted, in response, that the shells in the possession of the sheriff and exhibited, appeared to be the same shells as to kind and character which he was using at the time of the homicide, and were bought at the same store.

The sheriff further testified that he received the gun from appellant's aunt on the morning following the homicide on the evening before, and that the right-hand bar-

rel showed signs of having been recently discharged. There was only one shot fired in the killing. Subsequently, the sheriff made tests, firing only the right-hand barrel of the gun, and using the shells aforementioned, upon patterns, these tests being made at distances of fifteen feet, twenty feet, and twenty-five feet from the gun. These patterns were introduced in evidence and the sheriff testified that the pattern which was made at twenty feet corresponded with the pattern upon the body of the deceased of which an examination was made by the sheriff about one hour after the homicide. In this the sheriff was corroborated by the physician who examined the dead body and was shown the patterns at the trial. The clothes worn by the deceased at the time he was shot were also exhibited to the jury, properly identified.

Appellant has vigorously argued that the evidence in respect to the tests was improperly admitted; and the chief ground urged for the objection is that it was not shown with sufficient certainty that the tests were made with shells loaded with the same kind of powder or with the same size load of powder which was in the particular shell with which the deceased was shot, it being admitted in the evidence that different sized loads of powder will make a different pattern in the scattering of small shot, such as were the shots which killed the deceased.

Many courts have shown considerable reluctance in admitting what is called in the books ''experimental evidence,'' and have said that such evidence should be received with great caution. But the modern tendency is to receive such evidence, when the comparative conditions are such as to be substantially the same in regard to the particular issue in question. It is not required that all the conditoins shall be precisely reproduced; but it is sufficient if they are so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the tests are directed. As said in Harrison v. Railway Co., 93 Miss. 40, 46 So.

408, the circumstances of the tests or experiments must be (1) identical, or (2) nearly identical, with those with which the experiments are sought to be compared; and all the authorities are to the effect that these questions are largely within the sound discretion of the trial judge, and that the only effect of a variation between a precise and a substantial reproduction is as to the weight of the experimental evidence rather than its admissibility.

It seems to us that the probabilities are so strong in favor of the affirmative that the experiments or tests in this case were made under substantially similar conditions, so far as were material to the particular issue in hand, that the trial judge cannot be held to have abused his discretion in admitting the evidence. If the requirements of the rule were that all conditions must be, without doubt, so perfectly identical that the result would amount to an irrefutable demonstration, it would mean that experimental evidence would largely disappear as a practical method of proof; for it is impossible in most cases to precisely reproduce all conditions or to show with absolute certainty that all conditions have been precisely reproduced. The rule must be allowed an operation within what is reasonably fair and practicably possible according to the probative probabilities, without requiring absolute precision or certainty either as to comparative conditions or the proof thereof.

The other assignments have been considered, and we are of the opinion that no reversible error has been presented.

Affirmed.